485 So.2d 1142 (1986)
Ray Carlyn HOLMAN and Ann Jacqueline Holman
v.
JOE STEELE REALTY, INC., et al.
84-1217.
Supreme Court of Alabama.
February 28, 1986.
Gary F. Burns and Thomas E. Davis, of Burns, Shumaker & Davis, Gadsden, for appellants.
James C. Inzer, Jr., of Inzer, Suttle, Swann & Stivender, Gadsden, for appellees.
ADAMS, Justice.
This is an appeal from a summary judgment pursuant to Rule 54(b), Ala.R.Civ.P., in a fraud action in favor of appellees-defendants, Joe Steele Realty of Gadsden, Inc. (hereinafter Steele Realty); David Clokey; and James and Carolyn Minton.[1]
The Mintons entered into a listing agreement to sell their residence with Betty Batson, *1143 a real estate agent employed by Steele Realty. The defendant, David Clokey, is a licensed real estate broker and president of Steele Realty. On June 20, 1983, the plaintiffs-appellants, Ray and Jacqueline Holman, contacted Clokey and were shown the Mintons' home.
Clokey informed the Holmans that the Mintons were behind in their mortgage payments and were eager to sell their residence. After negotiations with Clokey, the Holmans agreed to purchase the Mintons' residence for $44,900.00.
A contract of sale was executed by the Holmans and the Mintons on June 21, 1983. The contract stated that the Holmans agreed to pay $7,000.00 as a down payment, assume an outstanding mortgage of approximately $18,500.00, and pay the balance of the purchase price upon the sale of the house in which they were living. Additionally, stipulation eight of the sales contract provided "possession to be given purchaser 30 days after closing." No date for closing was stipulated in the contract.
The $7,000.00 down payment was paid by the Holmans and was deposited into Steele Realty's escrow account. It was designated in the sales contract as earnest money, subject to forfeiture in the event the Holmans failed to perform the sales contract. After execution of the contract of sale, Clokey withdrew approximately $563.00 from the escrow account to pay three past due mortgage payments on the Minton residence. The Mintons executed a promissory note in favor of the Holmans for the amount of the mortgage payments.
In addition to paying the past due mortgage payments on the Minton residence, the Holmans made the monthly mortgage payment on the Minton residence from July 1983 until October 1984. Item 10 of the contract of sale provided: "purchaser to make monthly payments on house as of July 1983."
At about the same time the contract of sale of the Minton residence was negotiated, Clokey contracted with the Holmans to sell their residence. Clokey attempted to sell the Holmans' home, without success, until October 1984.
The Holmans alleged that they asked Clokey in March 1984 to put them into possession of the Mintons' residence. Clokey refused the Holmans' request and testified in deposition that he told the Holmans that they could be put into possession of the Minton residence following the closing of the sale, which would occur when the Holmans paid the balance of the purchase price. In October 1984, the Holmans rescinded the listing agreement with Clokey, removed their residence from the market, and requested that Clokey return the remainder of the $7,000.00 down payment held in escrow under the sales contract. Clokey refused to return the down payment.
The Holmans filed suit in the circuit court, alleging fraud and conversion in the sale of the Minton residence. The Holmans averred that prior to the execution of the contract for sale on June 21, 1983, Clokey, as the agent of the Mintons, represented to the Holmans that they would be placed in possession of the Mintons' residence within 30 days from the execution of the contract of sale. Thereafter, plaintiffs amended their complaint to allege that Clokey represented that they would be put in possession of the Minton residence "by August 1, 1983."
In their answers, the defendants denied the existence of an agency relationship between Clokey and the Mintons and also denied that the Mintons were to surrender possession of the residence prior to the closing of the contract of sale. The Mintons counterclaimed against the Holmans, demanding specific performance of the sales contract, or, in the alternative, damages for breach of contract.
Each defendant filed a motion for summary judgment, which was granted by the trial court. The Holmans appealed.
The issue on appeal is whether the trial court erred by granting summary judgment for defendants on plaintiff's fraud claim. We conclude that the trial court did not err and affirm its judgment.
*1144 Summary judgment is appropriate when there is an absence of a genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. White v. Law, 454 So.2d 515 (Ala.1984).
Reliance is an essential element to be proved in an action for fraud. Code 1975, § 6-5-101; Desroches v. Complete Auto Transit, Inc., 409 So.2d 417 (Ala. 1982). In Ex parte Leo, 480 So.2d 572 (Ala.1985), another real estate fraud case, we observed:
Speaking to the element of reliance, this Court, in Marshall v. Crocker, 387 So.2d 176, 178 (Ala.1980), quoting Jordan & Sons v. Pickett, 78 Ala. 331 (1884), opined:
The fraud, which entitles a purchaser of property to a right of action for deceit, ordinarily consists in the misrepresentation... of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, and whereby he is deceived and injured. [Emphasis added.]
Also in Ex parte Leo, this Court relied upon the following language from Cook v. Brown, 393 So.2d 1016, 1019 (Ala.Civ.App. 1981), which is equally germane to the instant case:
Although a plaintiff alleged to have been injured by a defendant's misrepresentation must have in fact acted upon it to his injury believing it to be true to maintain his action for fraud against the defendant, if he had prior knowledge of its falsity or if the circumstances surrounding the pronouncement of same would have aroused suspicion as to its validity in the mind of a reasonable person, he cannot be said to have reasonably relied upon the misrepresentation and, therefore, cannot obtain damages or other relief from defendant.
480 So.2d at 574.
Applying these principles of law to the case at hand, we conclude that the Holmans have failed to provide a scintilla of evidence to support the reliance element essential to their fraud claim, and, therefore, that defendants are entitled to judgment as a matter of law.
There is no showing in the record of the plaintiff's justifiable reliance upon the alleged fraudulent representations of Clokey. The record does reflect that after the alleged representation of Clokey was made, the Holmans executed a contract for sale that clearly reads "possession to be given purchaser 30 days after closing." In Broadway v. Household Finance Corp. of Huntsville, 351 So.2d 1373 (Ala.Civ.App. 1977), at 1376, it was said that "[i]n civil contractual matters, the law has always been that one is presumed to know and intend what he places his signature to."
The instant case does not come within the rule of Southern Building & Loan Ass'n v. Dinsmore, 225 Ala. 550, 144 So. 21 (1932), that the law imputes no knowledge of a contract's contents to a party who signs the contract without having read or having knowledge of its contents, if that party is lulled into a feeling of security because of a misrepresentation of the contents of the contract and because of special circumstances, relationships, or disability of the party relating to the contract's execution. See also Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala.1983); Rose v. Lewis, 157 Ala. 521, 48 So. 105 (1908). There is no evidence that the Holmans did not read or were incapable of understanding the import of the contract provision. There is no evidence of any special relationship between the Holmans or Clokey or any special circumstance or disability of the Holmans that would negate a finding that they knew of the contract provision. Moreover, there is no evidence of any misrepresentation of the content of the agreement or the employment of trick or artifice that would lull the Holmans into a false sense of security.
The delay of the Holmans in enforcing the alleged possession date and thereafter the delay in filing suit also negate a finding of reliance. Although the agreement was signed on June 21, 1983, the Holmans' pleadings establish that no demand *1145 was made for possession of the Minton home until March 1984seven months after the Holmans allege they were promised possession. Despite being denied possession of the Minton home in March 1984, the Holmans continued to attempt to sell their home until October 1984, when they removed their house from the market and filed suit. Had the alleged representation of Clokey been a material inducement upon which the Holmans relied, the Holmans would have expedited their initial demand for possession as well as their fraud claim once they had knowledge that possession would not be forthcoming.
In addition, the contract of sale recited: "purchaser to make monthly payments on house as of July 1983." The inclusion of the word "payments" evinces an understanding that the Holmans were to make more than one payment on the Mintons' mortgage. In fact, the Holmans made monthly payments on the Mintons' mortgage from July 1983 until October 1984 without having legally assumed the mortgage and with knowledge that possession of the Minton residence would not be given in August 1983.
The actual or imputed knowledge of the Holmans of the contract possession provision, as well as the Holmans' actions, preclude any finding of a reasonable reliance upon the alleged representation of Clokey. These factors foreclose an actionable fraud claim, and the defendants are entitled to judgment as a matter of law.
In conclusion, we emphasize that we make no determination and express no opinion with respect to the remaining issues in this pending cause.
AFFIRMED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I write separately to expand briefly upon the concluding paragraph of the opinion. The central thrust of the opinion is to the effect that the absence of any contractual provision with respect to the Holmans' right of possession before "closing," coupled with their course of conduct, bars their claim for fraud. But this holding is not to be construed as validating, for other purposes, the contract and its enforceability. Indeed, the contract is a "model" of ambiguity. It not only fails to specify a date of closing, but also fails to condition closing upon the sale of the Holmans' home. The $7,000.00 down payment and the additional monthly payments on the Mintons' mortgage (which prevented foreclosure) are highly suspect as being ineligible for forfeiture, particularly in light of the Holmans' non-possession of the Mintons' property. See Humphrey v. Humphrey, et al., 254 Ala. 395, 48 So.2d 424 (1950). I make these observations in the abundance of caution so as not to mislead the trial court in its further determination of the issues still pending in this cause the counterclaim and the interpleader action.
NOTES
[1] Still pending before the circuit court is a counter-claim filed by the Mintons, as well as an interpleader action filed by Steele Realty.